<u>IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE</u>

FV-1, INC. IN TRUST FOR MORGAN )
STANLEY MORTGAGE CAPITAL )
HOLDINGS, LLC. )
      Plaintiff, )
  )
vs. )
  )
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
and )
FIDELITY NATIONAL TITLE )
INSURANCE COMPANY d/b/a )
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, )
  )
      Defendant. )

**FILED**
11:09 _____

DEC 2 7 2013

MAHAILIAH HUGHES, CLERK
BY _____ Aw D.C

Docket No. 83CC1-2013-CV-1455

## <u>COMPLAINT</u>

    FV-1, Inc, in trust for Morgan Stanley Mortgage Capital Holdings, LLC, ("Plaintiff") by and through counsel, files the cause of action against the Defendants, Commonwealth Land Title Insurance Company and Fidelity National Title Insurance Company d/b/a as Commonwealth Land Title Insurance Company.

## I. <u>PARTIES, JURISDICTION AND VENUE</u>

    1. Plaintiff, FV-1, Inc, in Trust for Morgan Stanley Mortgage Capital Holdings, LLC, ("Plaintiff"), is a Tennessee corporation with its principal place of business in Sumner County, Tennessee.

    2. Defendant, Commonwealth Land Title Insurance Company is a land title insurance company doing business in the State of Tennessee and may be served with process at 601 Riverside Avenue, Building Five, Fourth Floor, Jacksonville, Florida 32204.



**EXHIBIT**
A

3.  Defendant, Fidelity National Title Insurance Company now doing business as Commonwealth Land Title Insurance Company is a land title insurance company doing business in the State of Tennessee and may be served with process at 601 Riverside Avenue, Building Five, Fourth Floor, Jacksonville, Florida 32204.

4.  Jurisdiction and venue are proper in this cause in that the real property for which the title insurance policy at issue was to have been issues is located in Sumner County, Tennessee.

## II.  **FACTS**

5.  On or about July 2007, Lisa Vaske and Brian Vaske ("Borrowers"), refinanced with Branch Banking & Trust ("BB&T") through the execution of a promissory note in the principal amount of $157,500.00 ("Note") for the property located at 340 N. Birchwood Drive, Hendersonville, Tennessee 37075 ("Property"). A copy of the Note is attached as Exhibit 1.

6.  The Note was secured by a Deed of Trust dated July 31, 2007 from Borrowers in favor of BB&T. A copy of the Deed of Trust is attached hereto as Exhibit 2 and referenced herein as "BB&T Deed of Trust".

7.  The BB&T Deed of Trust was prepared by Statewide Title & Escrow ("Statewide") of Madison, Tennessee and recorded in the Register of Deeds Office for Sumner County, Tennessee on October 11, 2007 as recorded in Record Book 2849, Page 811.

8.  Pursuant to the closing of the Note, the amount of $144,650.51 was paid to or to be paid to Countrywide Home Loans Servicing to pay off the senior mortgage on the Property.

2

9. Plaintiff avers that at the closing of the transaction between the Borrowers and BB&T, Statewide served as both the closing agent and as the agent for the issuance of the title insurance policy purchased by BB&T on the Property.

10. Plaintiff avers that at the closing of the BB&T Deed of Trust, BB&T purchased title insurance on the Property through Defendant's agent, Statewide.

11. BB&T was thereafter issued by Defendant Commonwealth Land Title Insurance Company, a Title Policy No. H65-889271 relative to the BB&T Deed of Trust ("Title Policy").

12. Pursuant to the Title Policy, Defendant Commonwealth insured the Property to be free and clear of liens.

13. On or about April 25, 2011, after beginning its process of foreclosure on the BB&T Deed of Trust, Plaintiff determined that there were three (3) mortgages of record senior to the BB&T Deed of Trust plus a senior judgment of record.

14. On or about April 25, 2011, Plaintiff submitted a claim on the Title Policy seeking reimbursement for its lost interest, attorney fees and other costs.

15. On or about May 16, 2011, Plaintiff was issued by Defendant Commonwealth a Letter of Indemnity, a copy of which is attached hereto as Exhibit 3.

16. Plaintiff avers that after the closing of the BB&T Deed of Trust that there existed a senior deed of trust that was to have been extinguished by Statewide at the closing of the Note. Specifically, with the closing of the Note there was to have been a cancellation or release of the deed of trust in the principal sum of $141,550.00 executed by the Borrowers to Statewide, as Trustee for Landmark Financial Services, Inc., dated

3

May 11, 2006 and recorded on August 4, 2006 of record in Register's Office for Sumner County, Tennessee, Record Book 2583, Page 3 ("Senior Deed of Trust").

17. Plaintiff avers that the Defendant, through its agent Statewide, failed to obtain the cancellation or release of the Senior Deed of Trust.

18. Plaintiff avers that the Defendant, through its agent Statewide, despite failing to obtain the cancellation or release of the Senior Deed of Trust, issued the Title Policy to BB&T.

19. Due to the failure of the Defendant, through its agent Statewide, to obtain cancellation or release of the Senior Deed of Trust, on or about August 23, 2011, the Property was foreclosed on by Rubin Lublin Suarez Serrano, LLC, as Substitute Trustee for Statewide on a May 11, 2006 Deed of Trust held by The Bank of New York FKA the Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Based Certificates, Series 2006-12.

20. Plaintiff avers that the May 11, 2006 Senior Deed of Trust held by The Bank of New York FKA the Bank of New York, as Trustee for the Certificate Holders of the CWABS, Inc., Asset-Based Certificates, Series 2006-12 was to have been paid off after funding of the Note and the grant of the Deed of Trust, which said Title Policy insured.

21. On or about September 16, 2011, a Substitute Trustee's Deed was recorded in the Register's Office for Sumner County, Tennessee, of record in Record Book 3468, Page 117, confirming the August 23, 2011 foreclosure of the Senior Deed of Trust. A copy of the September 16, 2011, a Substitute Trustee's Deed was recorded in the Register's Office for Sumner County, Tennessee, of record in Record Book 3468, Page 117, is attached hereto as Exhibit 4.

4

22. Plaintiff avers that the foreclosure of the May 11, 2006 Senior Deed of Trust and the recording of the September 16, 2011, a Substitute Trustee's Deed in the Register's Office for Sumner County, Tennessee, of record in Record Book 3468, Page 117, extinguished the lien interest of the Plaintiff in the Property.

23. On or about May 17, 2013, the BB&T Deed of Trust was assigned to the Plaintiff pursuant to the "Assignment and Transfer of Lien" recorded in the Register of Deeds Office for Sumner County, Tennessee as recorded in Record Book 3773, Page 355. See Exhibit 5.

24. Plaintiff is the proper party to bring this claim under the Title Policy.

25. On or about August 30, 2013, Defendant denied the Plaintiff's claim under the Title Policy.

III.     COUNT 1-BREACH OF CONTRACT

26. Plaintiff adopts all the allegations set forth in Paragraphs 1-25 above as if set forth fully herein.

27. Plaintiff avers that Defendant Fidelity is now doing business as Commonwealth and as such is fully responsible for all claims under the Title Policy, including all actions of its agent, Statewide, which said actions include failing to cancel or extinguish the Senior Deed of Trust causing the Plaintiff's claim under the Title Policy due to the loss of its lien rights on the Property.

28. Plaintiff avers that the based upon the foreclosure of the Senior Deed of Trust, other than the Title Policy, the Plaintiff will not receive value relative to its Deed of Trust.

5

29. Plaintiff avers that the Title Policy was to insure the Plaintiff against loss incurred against various claims to the title, including but not limited to:

a. Title to the estate or interest described in Schedule A being vested other than as stated therein;

b. Any defect in or lien or encumbrance on the title;

c. Unmarketability of the title;

d. Lack of a right of access to and from the land;

e. The invalidity or unenforceability of the lien or the insured mortgage upon the title;

f. The priority of any lien or encumbrance over the lien of the insured mortgage;

g. Lack of priority of the lien of the insured mortgage over any statutory lien for services, labor or material.

30. Plaintiff avers that the Defendants have improperly refused to make payment under the said Title Policy despite the fact that the Plaintiff's lien interest in the Property was extinguished due to the failure of the Defendants' agent, Statewide, to cancel or have released the Senior Deed of Trust.

31. Plaintiff avers that the Defendants have thus breached the Title Policy.

32. Plaintiff avers that it is entitled to a judgment against the Defendants for breach of the Title Policy.

33. For its claim for breach of the Title Policy, Plaintiff demands judgment against the Defendants, jointly and severally, in the amount of $157,500.00 plus attorney's fees and expenses incurred by virtue of the claims under the Title Policy.

6

## IV.    COUNT 2-NEGLIGENCE

34. Plaintiff adopts all the allegations set forth in Paragraphs 1-33 above as if set forth fully herein.

35. Plaintiff further avers that the Defendants' agent, Statewide, issued the Title Policy insuring to the Plaintiff, as assignee of BB&T, that the BB&T Deed of Trust was the senior lien on the Property and that all prior liens had been released.

36. Plaintiff avers that the Defendants' agent, Statewide, had a duty to complete all aspects of the closing, including extinguishing the Senior Deed of Trust.

37. Plaintiff avers that the Senior Deed of Trust was not extinguished resulting in the Plaintiff's lien on the Property pursuant to the BB&T Deed of Trust being deemed junior and thus extinguished upon the foreclosure of the Senior Deed of Trust.

38. Plaintiff avers that the Defendants' agent, Statewide, breached its duty in failing to extinguish the Senior Deed of Trust and in issuing a Title Policy insuring that the BB&T Deed of Trust was the senior deed of trust on the Property when in fact all prior mortgages were not cancelled.

39. Plaintiff avers that the proximate cause of the Plaintiff's damages was the acts and omissions of the Defendants' agent, Statewide, in the closing of the BB&T Deed of Trust and in issuing a Title Policy without all prior liens being cancelled.

40. Plaintiff avers that the actions of the Defendants' agent, Statewide, are imputed to the Defendants herein and that as such, the Defendants are vicariously responsible for the acts and omissions of their agent, Statewide, in all respects related to the closing of the BB&T Deed of Trust and the issuance of the Title Policy.

41. Plaintiff demands judgment against the Defendants, jointly and severally, in the amount of $157,500.00 plus attorney's fees and expenses incurred by virtue of the claims under the Title Policy.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, FV-1, Inc, in Trust for Morgan Stanley Mortgage Capital Holdings, LLC, Inc. prays as follows:

1.      That this Complaint and Summons be served on the Defendants and that they be required to answer within the time required by law;

2.      That Plaintiff be awarded all compensatory damages for breach of contract and negligence against Defendants for the loss of its lien on the Property, including but not limited to the full amount of indemnification under the Title Policy of $157,500.00, plus attorney fees and costs.

3.      That a jury of twelve (12) try the issues joined.

4.      For such further and general relief to which Plaintiff may show itself entitled to upon the hearing of this cause.

Respectfully submitted this _20_ day of _December_, 2013.

BERNSTEIN, STAIR & MCADAMS LLP


W. TYLER CHASTAIN (BPR #016029)
Attorney for Plaintiff
BERNSTEIN, STAIR & McADAMS
The Trust Company Building
4823 Old Kingston Pike, Suite 300
Knoxville, Tennessee 37919
TELEPHONE: (865) 546-8030

8

# BALLOON NOTE
(Fixed Rate)



THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

07/31/2007　　　　　　　　　　CONYERS, GA
(Date)　　　　　　　　　　　　(City)　　　　(State)

348 N BIRCHWOOD DRIVE
HENDERSONVILLE, TN 37075
(Property Address)

**1. BORROWER'S PROMISE TO PAY** In return for a loan that I have received, I promise to pay U.S. **$167,509.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

**BRANCH BANKING AND TRUST CO.**

I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST** Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.990 %. The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6 (B) of this Note.

**3. PAYMENTS (A) Time and Place of Payments** I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1st day of each month beginning on 09/01/2007
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.
If on 08/01/2022 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 1608 LUMPKIE RD. SUITE 400
CONYERS, GA 30094 or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payments will be in the amount of U.S. **$1,498.72**

**4. BORROWER'S RIGHT TO PREPAY** I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES** If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sum already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under the Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
**(A) Late Charges for Overdue Payments** If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.
**(B) Default** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
**(C) Notice of Default** If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
**(D) No Waiver By Note Holder** Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
**(E) Payment of Note Holder's Costs and Expenses** If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES** Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE** If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS** I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE** This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITHOUT RECOURSE
PAY TO THE ORDER OF

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

X _____ (Seal)　　　　X _____ (Seal)
LISA MARIE VASKE　　　　　　-Borrower

BRANCH BANKING AND TRUST COMPANY

X _____ (Seal)　　　　BY _____ (Seal)
-Borrower

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FHLMC UNIFORM INSTRUMENT Form 3290 (1/01)

Management Systems Development, Inc. (314) 518-3111　　Loan Exampled　　Abn_co_all(revised 6/2004)　　Copyright (c) 2003-2004



EXHIBIT
1



**STATEWIDE TITLE & ESCROW**
**109 CUDE LANE**
**MADISON, TN 37115**



Prepared By:
BRANCH BANKING AND TRUST CO.

The Maximum Principal Indebtedness for Tennessee recording tax purposes is $157,500.00

------------------- [Space Above This Line For Recording Data] -------------------

# DEED OF TRUST

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated 07/31/2007 , together with all Riders to this document.

(B) "Borrower" is
LISA MARIE VASKE AND BRIAN JAMES VASKE, WIFE AND HUSBAND

Borrower is the trustor under this Security Instrument.

(C) "Lender" is BRANCH BANKING AND TRUST CO..
Lender is a CORPORATION
organized and existing under the laws of GEORGIA.
Lender's address is 1586 KLONDIKE RD  SUITE 469 , CONYERS, GA 30094,
Lender is the beneficiary under this Security Instrument.

(D) "Trustee" is ARNOLD M. WEISS
a resident of 208 ADAMS AVENUE , MEMPHIS, TN 38103.

(E) "Note" means the promissory note signed by Borrower and dated 07/31/2007 .
The Note states that Borrower owes Lender
One Hundred Fifty Seven Thousand Five Hundred Dollars and No Cents
(U.S. $157,500.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than 08/01/2022 . The maximum principal indebtedness for Tennessee recording tax purposes is $157,500.00 .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

TENNESSEE - Single Family - FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01    (Page 1 of 18)

Record Book 2849 Page 811

EXHIBIT
2

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ Second Home Rider
☒ Balloon Rider    ☒ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider    ☐ Biweekly Payment Rider

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Initials: _____ Initials: _____ Initials: _____ App # _____

TENNESSEE--Single Family--FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01     (Page 2 of 16)

Management Systems Development, Inc. (270) 618-3113    Loan Completed™    043_IL_2    Copyright (c) 2000-2005

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property:

**SEE ATTACHED EXHIBIT "A"**

<u>Derivation Clause</u>

The instrument constituting the source of the Borrower's interest in the foregoing described property was a _____ recorded _____
in the Register's Office of _____ County, Tennessee.

Parcel ID Number:

which currently has the address of 340 N BIRCHWOOD DRIVE, HENDERSONVILLE, TN 37075
("Property Address"):

TO HAVE AND TO HOLD, the aforedescribed property, together with all the hereditaments and appurtenances thereunto belonging to, or in anywise appertaining, unto the Trustee, its successors in trust and assigns, in fee simple forever.

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of and interest on the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Initials: ____  ____  ____  ____  Page 3 of ____

TENNESSEE-Single Family- FNMA/FHLMC UNIFORM INSTRUMENT FORM 3043 1/01 (Page 3 of 15)
Management Systems Development, Inc. (800) 374-9117    Loan Origination    541-X_P    Copyright (c) 2000-2005

Record Book 2849 Page 813

Case 3:14-cv-00455   Document 1-1   Filed 02/13/14   Page 12 of 38 PageID #: 18

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes, assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Initials: _____ Initials: _____ Initials: _____ App #: _____

TENNESSEE--Single Family--FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01       Page 4 of 18
Management Systems Development, Inc. (800) 998-3111      Loan Company?       MR_PLI       Copyright (c) 2000-2004

Record Book 2849 Page 814

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

Initials ___  Initials ___  Initials ___  Initials ___  Initials ___

TENNESSEE- Single Family- FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01    (Page 5 of 15)

6. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

TENNESSEE- Single Family- FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01 (Page 6 of 16)

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes,

TENNESSEE - Single Family - FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01

but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

Initials: ___ Initials: ___ Initials: ___ Initials: ___    Appl #: _____

TENNESSEE - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT Form 3043 1/01    (Page 9 of 15)

Mortgage Electronic Systems Development, Inc.  (XXX) XXX-XXXX    Loan Assigned:    AFL_NI_9    Copyright (c) 2002-2004

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

Initials: _____ _____ _____ _____    | App # _____ |

TENNESSEE - Single Family - FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01 (Page 8 of 16)
Management Systems Development, Inc. (800) 813-9113    Loan EasyNext™    44T_tt_8    Copyright (c) 2000-2005

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

TENNESSEE - Single Family - FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT Form 3043 1/01 (Page 10 of 16)

Record Book 2849 Page 820

If this Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials ___  Initials ___  Initials ___  Initials ___     Page ___

TENNESSEE--Single Family--FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT  Form 3043 1/01     (Page 12 of 16)

Mortgage Systems Development, Inc. (516) 616-2161     Loan Disabled     GA_TN_8     Copyright (c) 2003-2004

Case 3:14-cv-00455   Document 1-1   Filed 02/13/14   Page 20 of 38 PageID #: 26

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Initials: _____  Initials: _____  Initials: _____  Initials: _____   App #: _____

TENNESSEE - Single Family - FANNIE MAE/FREDDIE MAC UNIFORM INSTRUMENT   Form 3043 1/01   (Page 13 of 15)
Management Systems Development, Inc.   (215) 949-4171   Loan Program™   Soft_in_1   Copyright (c) 2000-2001

Case 3:14-cv-00455   Document 1-1   Filed 02/13/14   Page 21 of 38 PageID #: 27

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

TENNESSEE- Single Family- FNMA/FHLMC UNIFORM INSTRUMENT Form 3043 1/01
Management Systems Development, Inc. (716) 678-0218    Loan EasyPac™    44-L,A,J

Record Book 2849 Page 823

Case 3:14-cv-00455   Document 1-1   Filed 02/13/14   Page 22 of 38 PageID #: 28

If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant at will of the purchaser and hereby agrees to pay the purchaser the reasonable rental value of the Property after sale.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Waivers. Borrower waives all right of homestead, equity of redemption, statutory right of redemption and relinquishes all other rights and exemptions of every kind, including, but not limited to, a statutory right to an elective share in the Property.


                    THIS SPACE INTENTIONALLY LEFT BLANK




Initials: [signatures]          Initials:          Initials:          Age [_____]

TENNESSEE- Single Family- FNMA/FHLMC UNIFORM INSTRUMENT Form 3043 1/01          (Page 14 of 15)
Homespuns Systems Development, Inc. (310) 349-2911          Loan Except000          IkFLH_2          Copyright (c) 2000-2004



                    Record Book 2849 Page 824

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

Witnesses:

_____

_____

_____ (Seal)      _____ (Seal)
LISA MARIE VASKE                  -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
BRIAN JAMES VASKE                 -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                  -Borrower                                      -Borrower

_____ (Seal)      _____ (Seal)
                                  -Borrower                                      -Borrower

                                             _____ (Seal)
                                                                               -Borrower

STATE OF TENNESSEE,                                    County ss: Davidson

On this 31st day of July , 2007 , before me personally appeared
LISA MARIE VASKE AND BRIAN JAMES VASKE

to me known to be the person(s) described in and who executed the foregoing instrument, and acknowledged
the execution of the same to be his/her/their free act and deed. Witness my hand and seal.

My Commission Expires: 7/5/11

                                                     _____
                                                     (Notary Public)

Initials: _____   Initials: _____   Initials: _____   Initials: _____        App # 6810048367

TENNESSEE- Single Family- FNMA/FHLMC UNIFORM INSTRUMENT Form 3043 1/01                    (Page 15 of 15)
Managed Systems Development, Inc. (215) 555-0112        Loan Compliant™        6VL_R_5         Copyright (c) 2000-2004

Record Book 2849 Page 825

Being Lot No. 154 on the Plan of Section Four, Glen Oaks of record in Plat Book 11, pages 280 and 281, Register's Office for Sumner County, Tennessee, to which plat reference is hereby made for a more complete legal description.

Map/Parcel Number: 145P-D-35

Being the same property conveyed to Kramer Investment Properties, LLC by Special Warranty Deed from Wells Fargo Bank Minnesota, NA, as Trustee dated 04/16/03 and filed for record on 05/29/03 in Book 1742, page 556, Register's Office for Sumner County, Tennessee.

Furthermore, being the same property conveyed to Lisa Marie Vaske and Brian James Vaske by Warranty Deed from Kramer Investments Properties, LLC dated 05/11/06, and filed for record on 05/04/06 in Book 2553, page 1, said Register's Office.

{DO01-VASKE.FFD/DD01-VASKE/18}

Record Book 2849 Page 826

**BALLOON PAYMENT RIDER TO NOTE AND SECURITY INSTRUMENT**

THIS BALLOON PAYMENT RIDER ("Rider") is made this ___JULY 31, 2007___ , and amends a Note in the amount of ___$187,500.00___ (the "Note") made by the person(s) who sign below ("Borrower") to ___BRANCH BANKING AND TRUST CO.___ ("Lender").

"THE LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER."

At least ninety (90) but not more than one hundred twenty (120) days prior to the Maturity Date, Lender must send Borrower a notice which states the Maturity Date and the amount of the "balloon payment" (which is the entire unpaid principal balance of loan and interest then due) which will be due on the Maturity Date (assuming all scheduled payments due between the date of the notice and the Maturity Date are made on time.)



| | |
|---|---|
| _____ Witness | _____ (Seal) Borrower LISA MARIE VASKE |
| _____ Witness | _____ (Seal) Borrower BRIAN JAMES VASKE |
| _____ Witness | _____ (Seal) Borrower |
| _____ Witness | _____ (Seal) Borrower |

Management Systems Development, Inc. (513) 518-3111 Loan Easyplan™ Eaa_bnb2[1/1/1](05/06) Copyright (c) 1996-2002

Case 3:14-cv-00455   Document 1-1   Filed 02/13/14   Page 26 of 38 PageID #: 32

# 1-4 FAMILY RIDER
## (Assignment of Rents)

**BRANCH BANKING AND TRUST CO.**

1504 KLONDIKE RD SUITE 400
CONYERS, GA 30094

THIS 1-4 FAMILY RIDER is made this _____ 07/31/2007 _____ and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

**BRANCH BANKING AND TRUST CO.**

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

349 N BIRCHWOOD DRIVE, KENDERSONVILLE, TN 37075

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

X _____ (Seal)     X _____ (Seal)

X _____ (Seal)     X _____ (Seal)

MULTISTATE 1-4 FAMILY RIDER - FNMA/FHLMC Uniform Instrument - Form 3170 1/01
Nacuopasini Systems Development, Inc. (800) 427-7316   Loan Enagine™   8.1.6/8C2vrs. 12/1908)   Copyright (c) 2001-2004

Record Book 2849 Page 828

# PLANNED UNIT DEVELOPMENT RIDER

BRANCH BANKING AND TRUST CO.

1506 KLONDIKE RD SUITE 460

COVTEE, GA 30094

Aig No. ▮▮▮▮▮▮▮▮                                                    07/23/2007

THIS PLANNED UNIT DEVELOPMENT RIDER is made this    07/23/2007    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

BRANCH BANKING AND TRUST CO.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
345 N BIRCHWOOD DRIVE, HENDERSONVILLE, TN 37076

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in recorded covenants and restrictions

(the "Declaration").

The Property is a part of a planned unit development known as

GLEN OAK

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS.   In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.**   Borrower  shall  perform  all  of  Borrower's  obligations  under  the  PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.**   So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and

(ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.**   Borrower shall take such action as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.**   Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)  termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.**   If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

X _____ (Seal)          X _____ (Seal)
   U.S. NAME VADRE

X _____ (Seal)          X _____ (Seal)
   BRIAN JAMES VADRE

                                           X _____ (Seal)

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac Uniform Instrument - Form 3150 1/01
Managed Systems Development, Inc. (310) 427-7918   Loan Concepts®   4.0 thru2Serv. (2/13/04)   Copyright (c) 2003-2004

Record Book 2849 Page 829

2001 Bryan Street, Suite 1700, Dallas, TX 75201
Toll Free: (800) 442-4303 □Fax: (214) 303-5427

5/16/2011

The Law Office of Robert S. Coleman Jr., P.A
1405 North Pierce suite 306
Little Rock, AR 72207

      Re:     Borrower: Lisa Marie Vaske
               Property: 340 North Birchwood Drive, Hendersonville, TN 37075
               Your no: LISA VASKE
               Policy no:

Dear Sir/Madam:

    You have notified Commonwealth Land Title Insurance Company (the "Company") that your client is the legal owner or servicer of the debt secured by the mortgage insured by the referenced Title Insurance Policy (the "Policy"). You have also informed the Company that a foreclosure is pending and that a recent search of the property has revealed a title defect or encumbrance described as follows:

Judgment recorded 11/1/2002 in book 1582 page 294
Prior mortgage recorded 4/30/2001 in book 1248 page 540
Prior mortgage recorded 6/4/2006 in book 1799 Page 130

    Upon proper foreclosure of the insured mortgage and the current insured's acquisition of the property at foreclosure sale or upon the insured's acquisition of title by deed in lieu of foreclosure, coverage will continue in favor of the insured in accordance with the terms and provisions of the Policy.

In order to expedite the resolution of this matter, the Company offers to issue its standard letter of indemnity to another title insurance underwriter, with respect to the Item. In the alternative, the company will consider issuing new title insurance at standard rates, to a third party purchaser(s) and or its lender(s), taking exception to the Item, but insuring against any loss or damage due to the item(s). The Company's liability on any new policy issued shall not exceed the amount of the current policy limits. The Company requires satisfaction of other underwriting requirements and the payment of the appropriate title insurance premium.

    This offer is conditioned upon our named insured in the referenced policy being the grantor or mortgagor in the new transaction. If you choose to close any new transactions with another title company, it is possible that it will determine that the items is covered by a Master Indemnity Agreement, Mutual Indemnification Agreement or Indemnity Treaty. I suggest that you inquire as to this possibility when the order is placed, as that will expedite handling. If an indemnity letter is required, I will need a copy of the new underwriter's title commitment before issuing the letter.

If you have any questions, please do not hesitate to contact us.

Sincerely,

Christina Puckett
Production Manager FNTG National Title Clearance Center
By Kathryn Newman

EXHIBIT

3

B.50

Pamela S. Waitkus, Register
Sumner County, Tennessee
Rec'd By: 706442          Date Received: 09/16/2011
Rec'd At:      18.00          Time Received:
Exam:       145.00          9/16/2011 at 8:50 AM
Clerk:        7.00          In Record Book:
Rdr:          7.00          3468
TOTAL:    312.60          Pgs 117-119

Prepared by and return to:
Robin Lublin Suarez Serrano LLC
119 S. Main Street, Suite 500
Memphis, TN 38103
BAC-11-00516

ADDRESSES NEW OWNER(S) AS FOLLOWS:

THE BANK OF NEW YORK MELLON
FKA THE BANK OF NEW YORK AS
TRUSTEE FOR THE
CERTIFICATEHOLDERS OF THE
CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-13

7105 Corporate Drive
PTX-A-274
Plano, TX 75024

SEND TAX BILLS TO:

THE BANK OF NEW YORK MELLON FKA
THE BANK OF NEW YORK AS TRUSTEE
FOR THE CERTIFICATEHOLDERS OF
THE CWABS, INC., ASSET-BACKED
CERTIFICATES, SERIES 2006-13

7105 Corporate Drive
PTX-A-274
Plano, TX 75024

MAP PARCEL NUMBER:

145P-D-35

ENTERED
John C. Isbell
Property Assessor
SEP 1 6 2011
145P-D-35

5th

## SUBSTITUTE TRUSTEE'S DEED

WHEREAS, by that certain Deed of Trust dated May 11, 2006 and recorded August 4, 2006, in Deed Book 2553, Page 3-13, Register's Office for Sumner County, Tennessee (the "Deed of Trust"), LISA MARIE VASKE AND BRIAN JAMES VASKE ("Borrower"), conveyed to STATEWIDE TITLE & ESCROW, Trustee, certain real property as described below (the "Property") to secure the payment of a certain indebtedness described in the Deed of Trust including, without limitation, that evidenced by a certain promissory note executed on May 11, 2006, (the "Note"), which obligation is presently held and owned by THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-13; and

WHEREAS, demand was made for the payment of the Note secured by the Deed of Trust referenced above, the payment of which was in default, and the obligation secured by the Deed of Trust referenced above was declared due and payable as provided in the Note and Deed of Trust, but the obligation was not paid; and

WHEREAS, Lender, the owner and holder of the Note evidenced by the Deed of Trust, demanded that the Property be advertised and sold in accordance with the terms of the Deed of Trust; and

WHEREAS, the undersigned, Rubin Lublin Suarez Serrano TN LLC, was duly appointed as Substitute Trustee in the place and stead of STATEWIDE TITLE & ESCROW, said appointment being set forth in Book 3466 Page 668 in said Register's Office; and

WHEREAS, a Notice of the Right to Foreclose, if secured pursuant to T.C.A. § 35-5-117, was given at least sixty (60) days prior to the first publication in accordance with Tennessee law; and

WHEREAS, the Substitute Trustee caused a diligent search of the Defense Manpower Data Center (DMDC) website for each known Borrower in compliance with the Service Members Civil Relief Act, and as such the foreclosure of this property is not subject to the provisions of 50 U.S.C. § 501, et seq.; and

WHEREAS, the Substitute Trustee caused a diligent search of the PACER website for each known Borrower and determined that Substitute Trustee was not subject to an automatic stay in bankruptcy both at the time foreclosure proceedings commenced and the time the Property was sold; and

WHEREAS, the Substitute Trustee caused notice to be published as provided for under T.C.A. § 35-5-104 and as provided in the Deed of Trust and Note in The Gallatin Newspaper that the Property would be sold on July 28, 2011, at 11:00 AM at the door of the Sumner County Courthouse, Gallatin Tennessee, such advertisement appearing in said newspaper on July 6, 2011, July 13, 2011, July 20, 2011, August 3, 2011, August 10, 2011, August 17, 2011 a copy of such notice was sent to the parties required under T.C.A. § 35-5-101(e) prior to the first publication date written above, and following such notice the default was not cured; and

WHEREAS, the Substitute Trustee at the time, place and date specified in said notices appeared and announced to those assembled that the July 28, 2011 sale was postponed to August 23, 2011 at the same time and place and notifications were made in accordance with T.C.A. § 35-5-101(f), if required.

Record Book 3468 Page 117



**EXHIBIT**

**4**

On August 23, 2011 at the same time and place, the Substitute Trustee appeared and offered the property for sale, and after opening the floor for competitive bids, sold said Property to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-13 at the price of Ninety Thousand and 00/100 ($90,000.00) this being the highest, last and best bid.

NOW, THEREFORE, Rubin Lublin Suarez Serrano TN LLC, Substitute Trustee as aforesaid, in consideration of the premises and the sum of Ninety Thousand and 00/100 ($90,000.00) to me in hand paid, the receipt of which is hereby acknowledged, by these presents do transfer and convey unto THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWABS, INC., ASSET-BACKED CERTIFICATES, SERIES 2006-13 ("Grantee"), its successors and assigns, all of its right, title and interest in and to the Property, including without limitation, the following described real estate and improvements located thereon, but no further or otherwise, located in Sumner County, Tennessee, and more particularly described as follows, to wit:

BEING LOT NO. 154 ON THE PLAN OF SECTION FOUR, GLEN OAKS OF RECORD IN PLAT BOOK 11, PAGES 280 AND 281, REGISTER'S OFFICE FOR SUMNER COUNTY, TENNESSEE, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR A MORE COMPLETE LEGAL DESCRIPTION.

This property is now or was formerly known as, 340 NORTH BIRCHWOOD, HENDERSONVILLE, TN 37075

Borrower's source of title is that certain Warranty Deed dated 8/11/2006 from Kramer Investments Properties, LLC to LISA MARIE VASKE AND BRIAN JAMES VASKE of record on 8/4/2006 in Book 2583 Page 1 in said Register's Office.

To have and to hold the aforesaid real estate, together with all improvements thereon, free from any equity of redemption, statutory right of redemption, spouse's elective share, homestead, dower, courtesy and all other exemptions, as provided in, but only to the extent provided in, said Deed of Trust. Said sale will be subject to (1) any and all unpaid ad valorem taxes (plus penalty and interest, if any) that may be a lien upon the Property; (2) any and all liens, defects, encumbrances, adverse claims, and other matters which take priority over the Deed of Trust upon which the foreclosure sale is had; (3) any statutory rights of redemption not otherwise waived in the Deed of Trust, including rights of redemption of any governmental agency, state or federal, which might not have been waived by such governmental agency; (4) applicable covenants, restrictions, building setbacks, easements, and to all conditions as shown with respect to the aforementioned Property in the Register's Office of Sumner County, Tennessee; (5) any governmental zoning and subdivision ordinances or regulations in effect thereon; (6) the accuracy of the Index Book of the said Register's Office; and (7) any other matters which an accurate survey of the Property might disclose.

Record Book 3468 Page 118

The Property is conveyed AS IS WHERE IS, without representations or warranties of any kind whatsoever, whether express or implied. Without limiting the foregoing, THE PROPERTY IS SOLD WITHOUT ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE.

WITNESS the signature of the Substitute Trustee this 10 day of September , 20 11.

Rubin Lublin Suarez Serrano TN LLC

By: _____
Printed Name: Carole Bernal
Title: Member

STATE OF GEORGIA        )
COUNTY OF GWINNETT )

Before me, Mary Miranda Allison , of the state and county aforesaid, personally appeared Carolee Bernal of Rubin Lublin Suarez Serrano TN LLC, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon oath, acknowledged himself/herself to be a Member of Rubin Lublin Suarez Serrano TN LLC, a Limited Liability Company, and that he/she as such officer, being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the Limited Liability Company by himself/herself as such officer.

WITNESS my hand and seal at office in Norcross , Georgia , this 10 day of September , 20 11.

_____
Notary Public

My commission expires: _____

STATE OF GEORGIA
COUNTY OF GWINNETT

The actual consideration or value, whichever is greater, for this transfer is $90,000.00.

_____
Affiant

Sworn to and subscribed
before me this 10 day of September , 20 11.

_____
Notary Public

My commission expires: _____

Record Book 3468 Page 119

Pamela L. Whitaker, Register
Sumner County Tennessee
Rec #: 006102      Instrument #: 1080611
Rec'd:     55.00      Recorded
State:      0.00      8/17/2012 at 8:58 AM
Clerk:      0.00      in Record Book
Other:      2.00              3773
Total:     57.00              Pgs 355-365

Prepared by:
Robert S. Coleman, Jr.
1405 North Pierce, Suite 306
Little Rock, AR 72207
(501) 663-6200
(501) 663-6201 (fax)

## ASSIGNMENT AND TRANSFER OF LIEN

The State of Tennessee
County of Sumner

KNOW ALL MEN BY THESE PRESENTS:

That Branch Banking and Trust Co., hereinafter called  Transferor , acting herein by and through its duly authorized officer of the County of ____Erie____ , and State of __New York__, for and in consideration of ten dollars ($10.00) cash, and other good and valuable consideration, to it in hand paid by FV-I, Inc. in trust for Morgan Stanley Mortgage Capital Holdings LLC, hereinafter called  Transferee , the receipt of which is hereby acknowledged, has this day sold, conveyed, transferred and assigned and by these presents does sell, convey, transfer and assign unto the said Transferee the hereinafter described indebtedness.

AND Transferor further grants, sells and conveys unto the Transferee all the rights, title, interest and liens owned or held by Transferor in the hereinafter described land by virtue of said indebtedness herein conveyed as assigned.

TO HAVE AND TO HOLD unto the said Transferee, Transferee  s successors and assigns, the following described indebtedness together with all and singular the following mentioned lien and any and all liens, rights, equities, remedies, privileges, titles and interest in and to said land, which Transferor has by virtue of being legal holder and owner of said indebtedness.

SAID INDEBTEDNESS, LIENS AND LAND BEING DESCRIBED AS FOLLOWS:

One certain promissory note executed by Lisa Marie Vaske, and payable to the order of Branch Banking and Trust Co., in the sum of $157,500.00, dated July 31, 2007, and bearing interest and due and payable in monthly installments as therein provided.

Said note being secured by a Deed of Trust of even date therewith to Branch Banking and Trust Co., lender, duly recorded in the real property records of Sumner County, Tennessee, in Book 2849 at Page 811, and secured by the liens therein expressed, on the following described lot, tract, or parcel of land, lying and being situated in Sumner County, Tennessee to wit:



EXHIBIT
5

Being Lot No. 154 on the Plan of Section Four, Glen Oaks of record in Plat Book 11, pages 280 and 281, Register s Office for Sumner County, Tennessee, to which plat reference is hereby made for a more complete legal description.
Map/Parcel Number: 145P-D-35

Being the same property conveyed to Kramer Investment Properties, LLC by Special Warranty Deed from Wells Fargo Bank Minnesota, NA, as Trustee dated 04/15/03 and filed for record on 05/29/03 in Book 1742, page 589. Register s Office for Sumner County, Tennessee.

Futhermore, being the same property conveyed to Lisa Marie Vaske and Brian James Vaske by Warranty Deed from Kramer Investments, LLC dated 05/11/06, and filed for record on 08/04/06 in Book 2563, page 1, said Register s Office.

Maximum principal indebtedness for Tennessee recording tax purposes is $0.00

Executed without recourse on the undersigned to be effective on the 3rd day of May, 2013.

Branch Banking and Trust Company, by Morgan Stanley Mortgage Capital Holdings LLC, its attorney in fact, by AMS Servicing, LLC, its attorney in fact

By: _Kelly Marling_
Name: _Kelly Marling_
Title: _Asst Vice President_

7693

## ACKNOWLEDGMENT

STATE OF _New York_ )
                      )
COUNTY OF _Erie_ )

Before me, the undersigned Notary Public in and for the State and County aforesaid, personally appeared _Kelly Marline_ , with whom I am personally acquainted and who upon oath acknowledged him/herself to be the _Assistant Vice President_ of AMS Servicing, LLC, as Attorney-in-Fact for Morgan Stanley Mortgage Capital Holdings, LLC as Attorney-in-Fact for Branch Banking and Trust Co., the within named bargainor, a Corporation, and that AMS Servicing, LLC was duly and properly appointed Attorney-in-Fact for Morgan Stanley Mortgage Capital Holdings, LLC as Attorney-in-Fact for Branch Banking and Trust Co. and that he/she as such _Assistant Vice President_ , being authorized to do so, executed the foregoing instrument for the purpose therein contained by signing the name of the Corporation by the said _Kelly Marling_ _Assistant Vice President_

Witness my hand and official seal this the _3rd_ day of _May_ , _2013_.

_[signature]_
Notary Public

My Commission Expires:
_3/20/14_

LISA J. COSTA
Notary Public, State of New York
No. 01CO6037786
Qualified in Erie County
Commission Expires March 20, 2014

7893

## IN THE CIRCUIT COURT FOR SUMNER COUNTY, TENNESSEE

FV-1, INC. IN TRUST FOR MORGAN
STANLEY MORTGAGE CAPITAL
HOLDINGS, LLC.

   Plaintiff,

vs.

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,
and
FIDELITY NATIONAL TITLE
INSURANCE COMPANY d/b/a
COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Docket No. _____

### COST BOND

 We, FV-1 INC., IN TRUST FOR MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS, LLC, as Principal, and Bernstein, Stair & McAdams LLP, as Surety, are held and firmly bound unto the Clerk of the Sumner County Circuit Court, for the payment of all costs awarded against the principal. To that end we bind ourselves our heirs, executors and administrators.

 The Principal is commencing legal proceeding in the Sumner County Circuit Court. If the Principal shall pay all costs which are adjudged against them, then this obligation is void. If the Principal fails to pay, then the surety shall undertake to pay all costs adjudged against the Principal. Mandated at T.C.A. § 20-12-120, et seq.

**PRINCIPAL**

By _____

FV-1, Inc., In Trust for Morgan
Stanley Mortgage Capital Holdings, LLC
Knoxville, Tennessee 37922

**SURETY**
**BERNSTEIN, STAIR & MCADAMS, LLP**

By: _____

W. TYLER CHASTAIN (BPR #016029)
BERNSTEIN, STAIR & McADAMS LLP
The Trust Company Building
4823 Old Kingston Pike, Suite 300
Knoxville, Tennessee 37919
865-546-8030

# STATE OF TENNESSEE
## 18th JUDICIAL DISTRICT
### Circuit Court Sumner County, Tennessee

___ X ___ Original
_____ Alias
_____ Pluries

FV-1, Inc. in Trust for Morgan
Stanley Mortgage Capital Holdings, LLC.

_____

**Plaintiff(s)**

vs. Case # 83CC1-2013-CV-1455
Commonwealth Land Title Insurance Company
and Fidelity National Title Insurance
Company

**Defendant(s)**

[ ] Local Sheriff
[ ] Out of County
[ ] Sec. of State
[X] Comm. of Ins.
[ ] Attorney
[ ] Certified Mail

**TO THE ABOVE NAMED DEFENDANT(S):** Fidelity National Title Insurance Company
d/b/a Commonwealth Land Title Insurance Company
You are hereby summoned to appear and defend a Civil Action filed against you in the Circuit Court, Sumner County, Tennessee; and your defense must be made within thirty (30) days from the date this summons is served upon you, exclusive of the day of service. You are further directed to file your defense with the Clerk of this Court and send a copy to the Plaintiff's Attorney, W. Tyler Chastain whose address is 4823 Old Kingston Pike, Suite 300, Knoxville, TN 31919 . In case of your failure to defend this action by the above date, judgment by default can be rendered against you for the relief demanded in the complaint.

**TO THE SHERIFF**: Execute this summons and make your return herein as provided by law.

**WITNESS, Mahailiah Hughes**, Clerk of the Circuit Court at Office in Gallatin, Tennessee, the

___1st___ Monday of ___November___, 2013 ___.

**Issued:** ___DECEMBER 27___, 20 13 ___.

ADA
FOR ASSISTANCE CALL
615-451-6023

MAHAILIAH HUGHES, CLERK

By: _Ashley West_ D.C.

_____

RECEIVED THIS SUMMONS FOR SERVICE, THIS ____ DAY OF _____, 20 ___

_____
Deputy Sheriff

### RETURN ON SERVICE OF SUMMONS

I hereby certify and return that on the _____ day of _____, 20 ____, I served this summons together with a copy o the complaint herein as follows:

_____

_____

_____

_____
SHERIFF - DEPUTY SHERIFF

## RETURN ON SERVICE OF SUMMONS BY MAIL

I hereby certify and return, that on the _____ day of _____, 20 ____, I sent, postage prepaid, by registered return receipt mail or certified return receipt mail, a certified copy of the summons and a copy of the complaint in Case No. _____ to the defendant, _____

_____. On the _____ day of _____, 20 ____ I received the return receipt for said registered or certified mail, which had been signed by _____ on the _____ day of _____, 20 _____. Said return receipt is attached to this original summons and both douments are being sent herewith to the Circuit Court Clerk for filing.

SWORN TO AND SUBSCRIBED BEFORE ME ON
THIS _____ DAY OF _____, 20 ___

_____
_____NOTARY PUBLIC or ____DEPUTY CLERK
My Commission Expires: _____

PLAINTIFF/PLAINTIFF'S ATTORNEY OTHER PERSON AUTHORIZED BY STATUTE TO SERVE PROCESS

_____ **NOTICE** _____

**TO THE DEFENDANT(S):**
        Tennessee law provides a ten thousand dollar ($10,000,00) debtor's equity interest personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the clerk of the court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

*ATTACH*
*RETURN RECEIPT*
*HERE*
*(IF APPLICABLE)*

**STATE OF TENNESSEE**

**COUNTY OF SUMNER**

*(To be completed only if copy certification required.)*

I, Mahailiah Hughes, Clerk of the Circuit Court in the State and County aforesaid, do hereby certify this to be a true and correct copy of the original summons issued in this case.

Mahailiah Hughes, Clerk

By: _____