IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FV-1, INC. IN TRUST FOR MORGAN )
STANLEY MORTGAGE CAPITAL )
HOLDINGS, LLC )
) NO. 3-14-0455
v. ) JUDGE CAMPBELL
)
COMMONWEALTH LAND TITLE )
INSURANCE COMPANY, et al. )

MEMORANDUM

Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 25) and Plaintiff's Motion for Summary Judgment (Docket No. 28). For the reasons stated herein, Defendants' Motion for Summary Judgment (Docket No. 25) is GRANTED in part and DENIED in part, and Plaintiff's Motion for Summary Judgment (Docket No. 28) is GRANTED in part and DENIED in part.

FACTS

This action arises from a claim filed by Plaintiff against a title insurance policy issued by Defendant Commonwealth Land Title Insurance Company ("Commonwealth") to Plaintiff's predecessor, Branch Banking & Trust ("BB&T"). The policy was issued in connection with a mortgage loan from BB&T to Lisa Vaske and Brian Vaske in July of 2007. The Note from the Vaskes to BB&T was secured by a Deed of Trust which was recorded in the Register of Deeds Office in Sumner County, Tennessee.

Statewide Title and Escrow of Tennessee, LLC ("Statewide") was, at the time of the subject mortgage, a Tennessee limited liability company owned by Lisa Vaske. During the time at issue,

Statewide was Defendant's authorized agent for issuing title insurance commitments and policies in Tennessee. The Title Insurance Agency Agreement ("Agency Agreement") between Defendant and Statewide appoints Statewide as Defendant's agent "solely for the purpose of issuing, on [Defendant's] forms, title insurance commitments, policies and endorsements on real estate located in the State of Tennessee." Docket No. 28-1.

The Agency Agreement states that Statewide is not authorized to engage in any business in the name of Defendant except as specifically authorized therein. The Agency Agreement also requires prior written consent of Defendant before Statewide commits Defendant to insure title to property in which Statewide or any of its owners, its partners or any entity controlled by Statewide has an interest.

Statewide issued a title policy to BB&T on behalf of Defendant at the closing of the Vaske mortgage. Statewide not only issued the subject title insurance policy, but it also acted as the closing agent for purposes of escrow, closing and other settlement functions related to the closing of the Vaske loan. It is undisputed that BB&T expected Statewide to disburse loan funds in accordance with its closing instructions and the settlement statement. It is also undisputed that the closing instructions listed, as one of the payoffs, a $143,268.92 mortgage to Countrywide Home Loans and that Statewide closed the loan without paying off the mortgage to Countrywide Home Loans.

In April of 2011, Plaintiff (as successor in interest to BB&T) submitted a title insurance claim to Defendant, indicating that several title defects had been discovered, including the Countrywide Home Loans mortgage. On May 16, 2011, Defendant notified counsel for Plaintiff that

2

it had received the claim. That letter from Defendant to Plaintiff's counsel stated, among other things:

> Upon proper foreclosure of the insured mortgage and the current insured's acquisition of the property at foreclosure sale or upon the insured's acquisition of title by deed in lieu of foreclosure, coverage will continue in favor of the Insured in accordance with the terms and provisions of the Policy.
>
> In order to expedite the resolution of this matter, the Company offers to issue its standard letter of indemnity to another title insurance underwriter with respect to the Item. In the alternative, the company will consider issuing new title insurance at standard rates, to a third party purchaser(s) or its lender(s), taking exception to the Item, but insuring against any loss or damage due to the Item(s).

Docket No. 28-15.

On September 16, 2011, the holder of the Countrywide Home Loans mortgage foreclosed on the subject Property. Plaintiff supplemented its claim with Defendant on August 15, 2012. On August 30, 2014, Defendant issued a letter to Plaintiff denying its claim under the subject policy and rescinding its offer of indemnity in the May 16, 2011 letter.

Thereafter, Plaintiff filed this action in state court, and Defendant removed it to this Court. Plaintiff's Amended Complaint (Docket No. 11) alleges causes of action against Defendant for breach of contract, negligence, and bad faith refusal to pay. The parties have filed cross-Motions for Summary Judgment. Plaintiff has conceded its negligence claim, and that claim is DISMISSED.

## SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material

facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

ANALYSIS

Defendant argues that the subject title policy was not properly issued because it was issued to the sole owner of Statewide (Vaske) and Statewide did not receive written consent from Defendant, as required by the Agency Agreement, before issuing the policy. Defendant asserts that because Statewide issued the policy without authority, the policy is invalid.

Plaintiff claims that this argument is new, never before asserted as a reason for denying coverage in this case. Indeed, Defendant's Denial Letter does not include this reason as justification for denying claims. Docket No. 28-22. The Denial Letter does state twice, however, that Defendant reserves the right to deny the claim based on additional grounds.

Plaintiff also argues that Defendant ratified the existence of the policy and indemnity in Plaintiff's favor and is equitably estopped from denying coverage. There is no evidence before the Court that BB&T had knowledge of any limitations on Statewide pursuant to the Agency Agreement. With regard to BB&T and the title insurance policy, Statewide acted with apparent authority on behalf of Defendant. If Statewide, as an agent for Defendant, negligently or intentionally issued the policy without Defendant's written consent, Statewide may have breached the Agency Agreement, but that does not necessarily void the title policy issued to a third party, BB&T.

An agent has apparent authority to bind a principal if the principal has, by its voluntary act placed the agent in such a situation that a person of ordinary prudence is justified in assuming that such agent is authorized to perform on behalf of his principal the act in question. *Fifth Third Mortgage Co. v. Chicago Title Ins. Co.*, 692 F.3d 507, 511 (6th Cir. 2012) (applying Ohio law). In *Fifth Third*, the Court held that because Chicago Title Insurance Co. entered into an issuing-agent agreement, authorizing another to issue title insurance policies on Chicago Title's behalf, Fifth Third's belief in that agent's authority was reasonable and thus bound Chicago Title by the policy issued on its behalf. *Id*.

In Tennessee, to make a showing of apparent authority, it must generally be shown that: (1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agency possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment. *Star Transportation, Inc. v. CSIR Enterprises, Inc.*, 409 F.Supp. 2d 939, 949 (M.D. Tenn. 2006). Apparent authority must be based on the acts of the principal rather than those of the agent. *Id*.

Apparent agency is essentially agency by estoppel; its creation and existence depend upon such conduct by the apparent principal as will preclude him from denying another's agency. *Star Transportation*, 409 F.Supp. 2d at 949. A principal is responsible for the acts of an agent within his apparent authority only where the principal himself by his acts or conduct has clothed the agent with the appearance of authority, and not where the agent's own conduct has created the apparent authority. *Id*. The claimant must be aware of the principal's acts from which the apparent authority is deduced, and he must deal with the agent in reliance thereon, in good faith, and in the exercise of reasonable prudence. *Id*. at 950. Thus, where the principal, by his own acts or conduct, has clothed the agent with the appearance of authority to act on his behalf, the principal is estopped from denying liability for the acts of the agent acting within that authority. *Savage v. City of Memphis*, 2015 WL 534663 at * 5 (Tenn. Ct. App. Feb. 9, 2015).

There is no dispute that, under the Agency Agreement, Commonwealth specifically appointed Statewide as its actual agent to issue title policies. While an agent's authority may be limited by the direction of his principal, if the other party to the contract is not made aware of that limitation, he may nevertheless rely on the agent's apparent authority to take those actions which are commensurate with his position. *Branch Banking and Trust Co. v. Fidelity National Title Ins. Co.*, 2013 WL 6844653 at * 7 (M.D. Tenn. Dec. 30, 2013).

Because Commonwealth entered into an Agency Agreement, authorizing Statewide to issue title insurance policies on Commonwealth's behalf, BB&T's belief in Statewide's authority was reasonable and thus bound Commonwealth by the policy issued on its behalf. The Court finds that Statewide's breach of the Agency Agreement does not void the title policy as to BB&T and its successors.

Defendant next contends that Statewide was BB&T's agent for escrow and settlement purposes, and that Statewide (as BB&T's agent) did not complete the conditions and requirements which had to be met before issuance of the title policy, like release of the Countrywide Home Loans mortgage. Commonwealth argues that it cannot be liable for Statewide's actions as BB&T's escrow and settlement agent.

The Agency Agreement does not appoint Statewide as an escrow or settlement agent for Commonwealth. On the contrary, it specifically appoints Statewide as Commonwealth's agent *solely* for the purpose of issuing title insurance commitments, policies and endorsements and expressly states that Statewide is *not* authorized to engage in any business in the name of Commonwealth other than that which is specifically authorized. Moreover, the Agency Agreement specifically states that Statewide is not authorized to receive any funds, including escrow and settlement funds.

When an agency relationship exists, the principal may be bound by the acts of the agent performed on the principal's behalf and within the actual or apparent scope of the agency. Escrow and settlement services were not within the actual or apparent scope of the agency of Statewide as agent for Commonwealth. Therefore, Commonwealth is not liable for Statewide's actions as escrow and settlement agent, outside of the scope of its actual or apparent authority. In fact, Plaintiff has represented that it is not attempting to support its claims on Statewide's authority to provide escrow and closing services to Plaintiff. Docket No. 35.

However, Defendant has not shown that Statewide was acting within the actual or apparent scope of an agency with BB&T either. The Court cannot find as a matter of law that Statewide was an agent of BB&T at the settlement of this mortgage.

Next, Commonwealth alleges that the express language of the title policy excludes Plaintiff's claim. Specifically, Defendant argues that the policy excludes matters which arise by reason of defects, liens, encumbrances, adverse claims or other matters created, suffered, assumed or agreed to by the insured claimant. This argument succeeds only if Statewide was acting as an agent for BB&T for purposes of escrow and settlement of this transaction. As the Court stated above, Defendant has not carried its burden of showing an agency relationship between BB&T and Statewide as a matter of law. Accordingly, Defendant has not shown that the Countrywide Home Loans falls within this exclusion.

Finally, Defendant contends that Plaintiff's claim for bad faith failure to pay fails as a matter of law. Defendant asserts that it properly denied the claim in good faith as no amounts have become due and payable under the terms of the policy. Defendant also argues that the policy was not properly issued, as set forth above. Lastly, Defendant maintains that Plaintiff cannot bring an action for bad faith because such a claim cannot be assigned, and it is a third party without standing to bring a bad faith claim.

The imposition of a statutory penalty upon an insurer is discretionary with the trial court. *Marlin Financial & Leasing Corp. v. Nationwide Mut. Ins. Co.*, 157 S.W. 3d 796, 812 (Tenn. Ct. App. 2004). Before a plaintiff may recover a penalty pursuant to Tennessee law, (1) the insurance policy must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit, and (4) the refusal to pay must not have been in good faith. *Id*.; Tenn. Code Ann. § 56-7-105. Plaintiff argues that it has met all the requirements under this statute. The Court finds, however, that the refusal to pay this claim was not taken in bad faith.

8

Therefore, the Court, in its discretion, finds that Defendant's Motion on this issue should be granted and Plaintiff's Motion on this issue should be denied. There is a plausible basis for Defendant's denial of this claim, and the Court finds that Plaintiff has not carried its burden to show that Defendant acted in bad faith.

CONCLUSION

For all these reasons, Defendant's Motion for Summary Judgment (Docket No. 25) is GRANTED in part and DENIED in part, and Plaintiff's Motion for Summary Judgment (Docket No. 28) is GRANTED in part and DENIED in part. Plaintiff's claims for bad faith penalty are DISMISSED.

IT IS SO ORDERED.

TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE